

**BABATUNDE WHITE**
**PRO SE**
*1644 CIPRIANI Pl.*
*925-470-5757(PH)*
*925-237-2129(FAX)*
*thecreative100@yahoo.com*

FILED

APR 17 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

*UNITED STATES DISTRICT COURT*

*FOR THE NORTHERN DISTRICT OF CALIFORNIA*

S̶F̶   ~~OAKLAND~~ *DIVISION*

ADR

*BABATUNDE M. WHITE,*

        *Petitioner-Defendant.*

*vs.*

*GREENWICH INVESTORS XXVI, LLC.*

*ET AL...*

*DOES 1-50, Inclusive*

*Respondent-Plaintiff*

*FEDERAL CASE NO:*

**C08-02016** EMC

*SUPPERIOR COURT OF CALIFORNIA*
*CONTRA COSTA COUNTY*
*PITTSBURG BRANCH*
*CASE NO. PS08-0548*

Jury Trial Demanded

*NOTICE OF REMOVAL and FEDERAL STAY*

*PURSUANT TO 28 USCA 1446(D) & 1452 with*

*SUPPLEMENTAL OF JURISDICTION*

TO: THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that defendant hereby removes to this Court the state court action described below.

On 03/21/2008, an action was commenced in the Superior Court of California Contra Costa County Pittsburg Branch, entitled

**SUM-130**

# SUMMONS
## (CITACION JUDICIAL)
### UNLAWFUL DETAINER—EVICTION
### (RETENCIÓN ILÍCITA DE UN INMUEBLE—DESALOJO)



**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):* BABATUNDE WHITE and DOES 1-50, INCLUSIVE

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* GREENWICH INVESTORS XXVI, LLC

2008 MAR 21  P 12: 22

You have 5 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. (To calculate the five days, count Saturday and Sunday, but do not count other court holidays. If the last day falls on a Saturday, Sunday, or a court holiday then you have the next court day to file a written response.)  A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 5 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. (Para calcular los cinco días, cuente los sábados y los domingos pero no los otros días feriados de la corte. Si el último día cae en sábado o domingo, o en un día en que la corte esté cerrada, tiene hasta el próximo día de corte para presentar una respuesta por escrito). Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | |
|---|---|
| 1. The name and address of the court is:<br>*(El nombre y dirección de la corte es):* | **CASE NUMBER:**<br>*(Número del caso):* C 08-0548 |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF CONTRA COSTA
PITTSBURG Branch, 45 CIVIC AVENUE, PITTSBURG, CA 94565

2. The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

JONATHAN SEIGEL (Bar # 168224)
SCHEER LAW GROUP, LLP
155 N. REDWOOD DRIVE SUITE 100, SAN RAFAEL, CA 94903

Phone No.:(415) 491-8900
Fax No.: (415) 491-8910

3. *(Must be answered in all cases)* An unlawful detainer assistant (Bus. & Prof. Code, §§ 6400–6415) ☒ did not ☐ did
for compensation give advice or assistance with this form. *(If plaintiff has received any help or advice for pay from an unlawful detainer assistant, complete item 6 on the next page.)*

A. WOODMAN

| | | |
|---|---|---|
| Date:<br>*(Fecha)* **MAR 21 2008** | Clerk, by _____<br>*(Secretario)* | , Deputy<br>*(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

4. **NOTICE TO THE PERSON SERVED:** You are served
a. ☐ as an individual defendant.
b. ☐ as the person sued under the fictitious name of *(specify):*
c. ☒ as an occupant
d. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)
          ☐ CCP 416.20 (defunct corporation)
          ☐ CCP 416.40 (association or partnership)
          ☐ CCP 415.46 (occupant)
   ☐ CCP 416.60 (minor)
   ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*

5. ☐ by personal delivery on *(date):*

**Page 1 of 2**

Form Adopted for Mandatory Use
Judicial Council of California
SUM-130 [Rev. January 1, 2004]

**SUMMONS—UNLAWFUL DETAINER—EVICTION**

Code of Civil Procedure, §§ 412.20, 415.456, 1167

*LexisNexis® Automated California Judicial Council Forms*

**NOTICE:** EVERYONE WHO LIVES IN THIS RENTAL UNIT MAY BE EVICTED BY COURT ORDER. READ THIS FORM IF YOU LIVE HERE AND IF YOUR NAME IS NOT ON THE ATTACHED SUMMONS AND COMPLAINT.

1. If you live here and you do not complete and submit this form within 10 days of the date of service shown on this form, you will be evicted without further hearing by the court along with the persons named in the Summons and Complaint.
2. If you file this form, your claim will be determined in the eviction action against the persons named in the Complaint.
3. If you do not file this form, you will be evicted without further hearing.

| CLAIMANT OR CLAIMANT'S ATTORNEY *(Name and Address):*      TELEPHONE NO.: | *FOR COURT USE ONLY* |
|---|---|
| ATTORNEY FOR *(Name):* | |

**NAME OF COURT:** SUPERIOR COURT OF CALIFORNIA, COUNTY OF CONTRA COSTA
STREET ADDRESS: 45 CIVIC AVENUE
MAILING ADDRESS:
CITY AND ZIP CODE: PITTSBURG 94565
BRANCH NAME: PITTSBURG

PLAINTIFF: GREENWICH INVESTORS XXVI, LLC

DEFENDANT: BABATUNDE WHITE and DOES 1-50, INCLUSIVE

| **PREJUDGMENT CLAIM OF RIGHT TO POSSESSION** | CASE NUMBER:<br>PS 08 - 0548 |
|---|---|
| **Complete this form only if ALL of these statements are true:**<br>1. You are NOT named in the accompanying Summons and Complaint.<br>2. You occupied the premises on or before the date the unlawful detainer (eviction) Complaint was filed.<br>3. You still occupy the premises. | *(To be completed by the process server)*<br>DATE OF SERVICE:<br>*(Date that this form is served or delivered, and posted, and mailed by the officer or process server)* |

I DECLARE THE FOLLOWING UNDER PENALTY OF PERJURY:

1. My name is *(specify):*

2. I reside at *(street address, unit No., city and ZIP code):*

3. The address of "the premises" subject to this claim is *(address):*

4. On *(insert date):* [_____], the landlord or the landlord's authorized agent filed a complaint to recover possession of the premises. *(This date is the court filing date on the accompanying Summons and Complaint.*

5. I occupied the premises on the date the complaint was filed *(the date in item 4)*. I have continued to occupy the premises ever since.

6. I was at least 18 years of age on the date the complaint was filed *(the date in item 4)*.

7. I claim a right to possession of the premises because I occupied the premises on the date the complaint was filed *(the date in item 4)*.

8. I was not named in the Summons and Complaint.

9. I understand that if I make this claim of right to possession, I will be added as a defendant to the unlawful detainer (eviction) action.

10. *(Filing fee)* I understand that I must go to the court and pay a filing fee of $ [        ] or file with the court the form "Application for Waiver of Court Fees and Costs." I understand that if I don't pay the filing fee or file with the court the form for waiver of court fees within 10 days from the date of service on this form (excluding court holidays), I will not be entitled to make a claim of right to possession.

(Continued on reverse)

| CP10.5 [New January 1, 1991] | **PREJUDGMENT CLAIM OF RIGHT TO POSSESSION** | Code of Civil Procedure §§ 415.46, 715.010, 715.020, 1174.25 |
|---|---|---|
| | | *LexisNexis® Automated California Judicial Council Forms* |

1 | SPENCER P. SCHEER #107750
JOSHUA L. SCHEER #242722
2 | AUSTIN D. GARNER #184022
REILLY D. WILKINSON #250086
3 | JONATHAN SEIGEL #168224
SCHEER LAW GROUP, LLP
4 | 155 N. REDWOOD DRIVE, SUITE 100
SAN RAFAEL, CA 94903
5 | Telephone: (415) 491-8900
Facsimile: (415) 491-8910
6 | M.700-U003S

7 | Attorneys for Plaintiff
GREENWICH INVESTORS XXVI, LLC

8

SUPERIOR COURT OF THE STATE OF CALIFORNIA

9

COUNTY OF CONTRA COSTA

10

PITTSBURG JUDICIAL DISTRICT

11

12

GREENWICH INVESTORS XXVI, LLC,          Case No.: PS 0 8 - 0 5 4 8

13

                                                                    COMPLAINT FOR UNLAWFUL
            Plaintiff,                                          DETAINER – LIMITED

14

                                                                    (Damages: Principal $0.00
        vs.                                                    Daily Damages $90.00 per day)

15

BABATUNDE WHITE, and DOES 1-50,

16 | inclusive,

17

            Defendant(s).

18

19

Plaintiff complains of Defendants and for cause of action alleges:

20

            1.     Plaintiff, GREENWICH INVESTORS XXVI, LLC, is a limited liability

21

company authorized to do business and commence legal proceedings in the State of California.

22

            2.     Defendants at all times herein mentioned resided in the State of

23

24 | California, County of Contra Costa.

25

            3.     The true names and capabilities, whether individual, corporate, associate

26

or otherwise, of the Defendants named herein as Does 1-50, inclusive, and each of them, are

27

unknown to Plaintiff, who therefore sues said Defendants by their fictitious names under Code of

28

1

COMPLAINT FOR UNLAWFUL DETAINER

1  Civil Procedure Section 474. Plaintiff asks leave of the Court to amend its Complaint to include

2  the true names and capacities of said Defendants when the same have been ascertained.

3        4.     Plaintiff is the owner of and entitled to immediate possession of the real

4  property in Contra Costa County, California, which is located at **1644 Cipriani Place,**

5
6  **Brentwood, CA 94513** (the "Property").

7        5.     Plaintiff owns said Property by virtue of a foreclosure sale duly held

8  pursuant to the power under the Deed of Trust and Promissory Note executed and delivered by

9  Defendants or their predecessors. A copy of said Promissory Note and Deed of Trust are

10  attached hereto as Exhibit "A."

11        6.     Defendants or their predecessors defaulted in the payment of said

12
13  Promissory Note and, thereafter, at the request of the owner and holder of said Promissory Note

14  and Deed of Trust, caused to be recorded in the Official records in the Office of the County

15  Recorder of Contra Costa County, California, a Notice of Default and Breach of Conditions of

16  the Deed of Trust and its Election to Sell the Property to satisfy the obligation thereby secured.

17        7.     After failure of Defendant or his predecessors to cure said default, a

18  Trustee's Sale of the Property was duly noticed, as required under Civil Code Section 2924 et

19  seq., to satisfy the obligation secured by the Deed of Trust.

20
21        8.     At the time and place noticed for Trustee's Sale, the Property was sold and

22  a corresponding Trustee's Deed was given to Plaintiff, thereby duly perfecting Plaintiff's title to

23  the Property. A copy of said Trustee's Deed is attached hereto marked Exhibit "B" and made a

24  part hereof.

25        9.     On March 5, 2008, after being unable to personally serve Defendant,

26  BABATUNDE WHITE, either at home or at his place of business, if any, Plaintiff posted, in a

27  conspicuous place on the Property, a written notice requiring Defendant and "All Others in

28  Possession" of the Property to quit and deliver up possession of the Property to Plaintiff within

2

1  three (3) days after service of said notice. Thereafter, on March 6, 2008, a copy of said Notice

2  was mailed to Defendant, BABATUNDE WHITE, in a sealed envelope with postage prepaid,

3  addressed to Defendant at his place of residence at the Property. A copy of said Notice to Quit

4  and Proof of Service is attached hereto as Exhibit "C" and is incorporated by reference.

5
6            10.     More than three (3) days have elapsed since the service of said Notice and

7  Defendant has failed and refused to deliver up possession of the Property.

8            11.     Defendant continues in possession of the Property without Plaintiff's

9  permission or consent.

10            12.     The reasonable value of the use and occupancy of the Property is the sum

11  of $90.00 per day, and damage to the Plaintiff caused by Defendant's unlawful detention thereof

12  has accrued at said rate since March 11, 2008, and will continue to accrue at said rate so long as

13  Defendant remains in possession of the Property.

14
15            WHEREFORE, Plaintiff prays judgment against Defendant and each of them for:

16            1.     Restitution of the Property;

17            2.     Damages at the rate of $90.00 per day from March 10, 2008 for each day

18  that the Defendants continue in possession of the Property, and

19            3.     Costs herein, attorney's fees and further relief as is proper.

20
21  Dated: 3/13/08                SCHEER LAW GROUP, LLP

22
23                      By:

24                           JONATHAN SEIGEL
                         Attorney for Plaintiff

25
26
27
28

                                          3

1  STATE OF CALIFORNIA
   COUNTY OF MARIN

2

3          I have read the foregoing COMPLAINT FOR UNLAWFUL DETAINER and
   know its contents.

4

5          I am one of the attorneys for GREENWICH INVESTORS XXVI, LLC, a party to
   this action. Such party is absent from the county of aforesaid where such attorneys have their
   offices, and I make this verification for and on behalf of that party for that reason. I have read

6  the foregoing document and know its contents. I am informed and believe and on that ground
   allege that the matters stated in it are true.

7

8          Executed on March 12, 2008, at San Rafael, California.

9          I declare under penalty of perjury under the laws of the State of California that the
   foregoing is true and correct.

10

11                            JONATHAN SEIGEL

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

We hereby certify that
this Document is a true
and correct copy of
the Original Document.

# ADJUSTABLE RATE NOTE
### (6-Month LIBOR Index - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

December 08, 2006               BREA                  CA    92821
[Date]                          [City]                [State]

1644 CIPRIANI PLACE, Brentwood, CA  94513

[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 796,000.00          (this amount is called " Principal"), plus interest, to the order of the Lender. The Lender is  Fremont Investment & Loan

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of          7.850 %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3. PAYMENTS ** SEE BALLOON PAYMENT RIDER ATTACHED HERETO AND MADE A PART HEREOF **

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the first day of each month beginning on  February 01, 2007
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  January 01, 2037                , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  2727 East Imperial Highway, Brea, CA  92821

or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 5,313.41          . This amount may change.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

MULTISTATE ADJUSTABLE RATE NOTE - 6-Month LIBOR Index   - Single Family -Freddie Mac UNIFORM INSTRUMENT

VMP-815N (0404)              Form 5520 3/04
VMP Mortgage Solutions (800)521-7291
Page 1 of 4                   Initials


EXHIBIT " A "

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of January, 2009 , and may change on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the six month London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for six-month U.S. dollar-denominated deposit in the London market, as published in *The Wall Street Journal*. The most recent Index figure available 45 days first before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding Five and 463/1000 percentage point(s) ( 5.463 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 10.850 % or less than 7.850 %. Thereafter, my interest rate will never be increased or decreased on any subsequent Change Date by more than 1.500 from the rate of interest I have been paying for the preceding period. My interest rate will never be greater than 13.850 % or less than 7.850 .%.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY ** SEE PREPAYMENT RIDER ATTACHED HERETO AND MADE A PART HEREOF **

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

XSS-12/28/2006

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of     15     calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be     6.000     % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

XSS-12/28/2006

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

** SEE PREPAYMENT RIDER ATTACHED HERETO AND MADE A PART HEREOF **
** SEE BALLOON PAYMENT RIDER ATTACHED HERETO AND MADE A PART HEREOF **

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

| | | |
|---|---|---|
| _White_ (Seal) | | _____ (Seal) |
| BABATUNDE WHITE   -Borrower | | -Borrower |
| | | |
| _____ (Seal) | | _____ (Seal) |
| -Borrower | | -Borrower |
| | | |
| _____ (Seal) | | _____ (Seal) |
| -Borrower | | -Borrower |
| | | |
| _____ (Seal) | | _____ (Seal) |
| -Borrower | | -Borrower |

*[Sign Original Only]*

PSASIS-01/24/2007

**Recording Requested By**
First American Title
0730-553349-134
Recording Requested By:

Return To:

Fremont Investment & Loan
P.O. BOX 34078
FULLERTON, CA  92834-34078

Prepared By:
Barbara Licon

30000000927523

CONTRA COS... Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
**DOC- 2006-0398650-00**
Acct 6- First American Title
Thursday, DEC 14, 2006 08:00:00
MIC    $1.00:MOD    $20.00:REC    $24.00
TCF    $19.00:DAF    $1.80:REF    $0.20
Ttl Pd    $66.00    Nbr-0003524036
                    kat/R2/1-20

20

————————[Space Above This Line For Recording Data]————————

# DEED OF TRUST

MIN 1001944-3000927523-4

DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "**Security Instrument**" means this document, which is dated December 08, 2006
together with all Riders to this document.
(B) "**Borrower**" is BABATUNDE  WHITE, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY

Borrower's address is 1644 CIPRIANI PLACE  Brentwood, CA  94513
. Borrower is the trustor under this Security Instrument.
(C) "**Lender**" is Fremont Investment & Loan

Lender is a    CORPORATION
organized and existing under the laws of CALIFORNIA

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS    Form 3005 1/01

VMP -6A(CA) (0207)
Page 1 of 15    Initials: BW
VMP MORTGAGE FORMS - (800)521-7291



398650

Lender's address is 2727 East Imperial Highway, Brea, CA 92821

(D) "Trustee" is Fremont General Credit Corporation, A California Corporation

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated December 08, 2006
The Note states that Borrower owes Lender Seven Hundred Ninety-Six Thousand   and
0/100ths                                                                                    Dollars
(U.S. $796,000.00            ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than January 01, 2037

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [X] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

PSASIS-01/24/2007

398650

(Q) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

County                    of                    Contra Costa                    :
                [Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

Parcel ID Number: 019-720-075-1                          which currently has the address of
1644 CIPRIANI PLACE                                                                       [Street]
Brentwood                                      [City], California 94513        [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

**-6A(CA)** (0207)                          Page 3 of 15          Initials: BMW          Form 3005 1/01

398650

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

PSASIS-01/24/2007

398650

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the



**398650**

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

Case 4:08-cv-02016-SBA   Document 1   Filed 04/17/2008   Page 18 of 36
To: Spencer Scheer   Page 8 of 16                    2007-12-25 21:42:32 (GMT)                    19256650427  From: Lawrence Ward

PSASIS-01/24/2007

· 398650

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

PSASIS-01/24/2007

398650

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

-6A(CA) (0207)                                        Page 8 of 15                          Initials: _____        Form 3005 1/01

**398650**

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

PSA.SIS-01/24/2007

**398650**

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

398650

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

PSA,SIS-01/24/2007

**398650**

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

PSASIS-01/24/2007

398650

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.



-6A(CA) (0207)                    Page 13 of 15                    Initials: [signature]        Form 3005  1/01

PSASIS-01/24/2007

**398650**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____        _Babatunde White_____ (Seal)
                                          BABATUNDE WHITE          -Borrower


_____        _____ (Seal)
                                                                   -Borrower


_____ (Seal)          _____ (Seal)
                     -Borrower                                     -Borrower


_____ (Seal)          _____ (Seal)
                     -Borrower                                     -Borrower


_____ (Seal)          _____ (Seal)
                     -Borrower                                     -Borrower

PSASIS-01/24/2007

398650

State of California
County of *Contra Costa*                                    } ss.

On *Dec, 11, 2006*          before me, *Nancy E. Cash Notary Public*
                                                              personally appeared

*Babatunde White*

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)

```
NANCY E. CASH
Commission # 1397092
Notary Public - California
Napa County
My Comm. Expires Feb 26, 2007
```

CERTIFIED BY FIRST AMERICAN TITLE
INSURANCE COMPANY TO BE A COPY
OF THE DOCUMENT RECORDED ON 03/03/2008
AS INSTRUMENT NO. 2008044116
IN BOOK          PAGE
OFFICIAL RECORDS OF CONTRA COSTA

[RECORDING REQUESTED BY:]
**First American Title Insurance Company
On behalf of Trustee Corps**

[WHEN RECORDED MAIL TO
AND MAIL TAX STATEMENTS TO:]
**WMD Realty, INC
1187 Coast Village Road Suite 1 #524
Santa Barbara, CA  93108**

---

[Space above this line for recorder's use only]

**THIS TRUSTEE'S DEED UPON SALE IS BEING RE-RECORDED SOLEY TO CORRECT THE NAME OF THE GRANTEE IN THE TRUSTEE'S DEED UPON SALE RECORDED ON 2/14/2008 AS INSTRUMENT NO. 2008031489 – THE SUBJECT DEED OF TRUST HAVING BEEN TRANSFERRED FROM FREMONT INVESTMENT & LOAN TO GREENWICH INVESTORS XXVI, LLC PRIOR TO THE SUBJECT FORECLOSURE SALE.**

Trustee Sale#: CA0811650    Loan#: 0011038981    Title Order#: 3380477 — $\sqrt{D}$

# AMENDED TRUSTEE'S
# DEED UPON SALE

The undersigned grantor declares:

RECORDING REQUESTED BY
FIRST AMERICAN TITLE COMPANY
AS AN ACCOMMODATION ONLY

1)    The Grantee herein **WAS** the foreclosing beneficiary.
2)    The amount of the unpaid debt together with costs was          **$798,632.25**
3)    The amount paid by the grantee at the trustee sale was          **$599,000.00**
4)    The documentary transfer tax  is          **$0.00**
5)    Said property is in the city of   **BRENTWOOD**
6)    APN # **019-720-075-1**

and **MTC FINANCIAL, INC., dba TRUSTEE CORPS** (herein called Trustee), as the duly appointed Trustee under the Deed of Trust hereinafter described, does hereby grant and convey, but without covenant or warranty, express or implied, to **GREENWICH INVESTORS XXVI, LLC** (herein called Grantee), all of its right, title and interest in and to that certain property situated in the County of **Contra Costa**, State of **California**, described as follows:

## See Exhibit "A" ATTCHED HERETO AND MADE A PART HEREOF

RECITALS:

This conveyance is made pursuant to the powers conferred upon Trustee by that certain Deed of Trust dated **12/08/2006** and executed by **BABATUNDE WHITE, A MARRIED MAN AS HIS SOLE AND SEPARATE**, as Trustor, and **Recorded on 12/14/2006 as Document No. 2006-0398650-00** of official records of **Contra Costa** County, **California**, and after fulfillment of the conditions specified in said Deed of Trust authorizing this conveyance.

Default occurred as set forth in a Notice of Default and Election to Sell which was recorded in the Office of the Recorder of said County, and such default still existed at the time of sale.

# EXHIBIT "B"

Trustee Sale#: **CA0811650**  Loan#: **0011038981**  Investor #:　Title Order#: **3380477**

All requirements of law regarding the mailing of copies of notices or the publication of a copy of the Notice of Default or the personal delivery of the copy of the Notice of Default and the posting and publication of copies of the Notice of a Sale have been complied with.

Trustee, in compliance with said Notice of Trustee's Sale and in exercise of its powers under said Deed of Trust, sold the herein described property at public auction on **02/04/2008**.  Grantee, being the highest bidder at said sale, became the purchaser of said property for the amount bid being **$599,000.00** in lawful money of the United States, or by credit bid if the Grantee was the beneficiary of said Deed of Trust at the time of said Trustee's Sale.

DATED: **02/04/2008**

**TRUSTEE CORPS, as Successor Trustee**

By:　**NIVIN T. YOUSSEF, Vice President**

STATE OF **California**

COUNTY OF **Orange**

On **02/04/2008** before me, _____ **Paul Kim** _____, a notary public, personally appeared NIVIN T. YOUSSEF who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public in and for said County and State

PAUL KIM
Commission # 1691470
Notary Public - California
Orange County
My Comm. Expires Sep 3, 2010

2

Trustee Sale#: CA0811650   Loan#: 0011038981   Investor #:   Title Order#: 3380477

# Exhibit "A"

PARCEL ONE:

LOT 134, AS SHOWN ON SUBDIVISION 8469, FILED DECEMBER 19, 2002, IN BOOK 450, PAGE 1, CONTRA COSTA COUNTY RECORDS, AS AMENDED BY CERTIFICATE OF CORRECTION RECORDED JULY 25, 2003, INSTRUMENT NO. 2003-359512, OFFICIAL RECORDS.

EXCEPTING THEREFROM, FOR THE BENEFIT OF THE GRANTOR, ITS SUCCESSORS-IN-INTEREST AND OTHERS, TOGETHER WITH THE RIGHT TO GRANT AND TRANSFER ALL OR A PORTION OF THE SAME, SUCH NON-EXCLUSIVE EASEMENTS AND RIGHTS AS MAY BE DESCRIBED IN THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS RECORDED IN THE OFFICIAL RECORDS OF CONTRA COSTA COUNTY, CALIFORNIA ON NOVEMBER 5, 2003, AS INSTRUMENT NO. 2003-546105 ("THE DECLARATION").

EXCEPTING THEREFROM:

ALL OIL, GAS, AND OTHER HYDROCARBONS LOCATED IN ALL OR ANY PORTION OF THE PROPERTY LYING MORE THAN FIVE HUNDRED (500) FEET BELOW THE SURFACE OF THE PROPERTY, BUT WITHOUT ANY RIGHT WHATSOEVER OF ENTRY ON THE SURFACE OR WITHIN FIVE HUNDRED (500) FEET BELOW THE SURFACE OF THE PROPERTY, AS RESERVED IN THE DEED RECORDED OCTOBER 1, 2002, INSTRUMENT NO. 2002-351660 OFFICIAL RECORDS.

EXCEPTING THEREFROM:

"ALL INTEREST IN SUB-SURFACE WATER RIGHTS BELOW 300 FEET THAT THEY MAY HAVE" AS SET FORTH ON THE FILED MAP.

PARCEL TWO:

NON EXCLUSIVE EASEMENTS AND RIGHTS TO THE EXTENT DESCRIBED IN THE DECLARATION AS BEING RESERVED OR GRANTED TO OR FOR THE BENEFIT OF OWNERS OF LOTS (AS SUCH TERMS ARE DEFINED IN THE DECLARATION).

4

## NOTICE FOR POSSESSION

TO:    BABATUNDE WHITE

and "ALL PERSONS IN POSSESSION" of the premises located at:

### 1644 CIPRIANI PLACE

### BRENTWOOD, CA 94513

NOTICE IS HEREBY GIVEN that:

1.    Within three (3) days after service on you of this Notice, in the event you are the Trustor of the Deed of Trust described below, or

2.    Within thirty (30) days after service on you of this Notice, in the event you are an occupant of the above described premises and not one of the Trustors of the Deed of Trust described below:

You are required to quit and deliver up possession of the premises to the undersigned or to SCHEER LAW GROUP, LLP, servicing agent, who is authorized to receive the same, or the undersigned will institute legal proceedings against you to recover possession of said premises and for rents or damages as provided by law.

You are required to quit and deliver up possession of said premises for the reason that they have been duly sold to the undersigned in accordance with Section 2924 of the Civil Code of the State of California, on or about February 4, 2008, under the power of sale contained in a Deed of Trust executed by you or by your predecessors in interest and recorded on or about December 14, 2006, recorded in the Official Records, Contra Costa County, California, and the title under sale has been duly perfected.

This notice to you is given pursuant to the provisions of Section 1161a (b) (3) of the Code of Civil Procedure of the State of California.

Dated: March 4, 2008

GREENWICH INVESTORS XXVI, LLC
its assignees and/or successors
OWNER

SCHEER LAW GROUP, LLP
JONATHAN SEIGEL
155 N. REDWOOD DRIVE, SUITE 100
SAN RAFAEL, CA 94903
(415) 491-8900
M.700-U003S

BY: _____
JONATHAN SEIGEL



EXHIBIT "C"

## SPECIAL NOTICE

THE FOLLOWING NOTICE IS GIVEN TO YOU IN THE
EVENT THAT THE FEDERAL FAIR DEBT COLLECTIONS
ACT APPLIES TO THIS COMMUNICATION.

**The following statement provides you with notice of certain rights which you may have by law. <u>Nothing in this statement modifies or changes the hearing date or response time specified in the attached documents</u> or your need to take legal action to protect your rights in this matter. No provision of the following statement modifies or removes your need to comply with local rules concerning the attached documents.**

## CONSUMER DISCLOSURE

This communication is made in an attempt to collect on a debt or judgment and any information obtained will be used for that purpose. Please be advised that if you notify GREENWICH INVESTORS XXVI, LLC'S attorneys in writing within 30 days that all or a part of your obligation or judgment to GREENWICH INVESTORS XXVI, LLC is disputed, then GREENWICH INVESTORS XXVI, LLC'S attorneys will mail to you a written verification of the obligations or judgment and the amounts owed to GREENWICH INVESTORS XXVI, LLC. In addition and upon your written request within 30 days, I will provide you with the name and address of the original creditor, if different from the current creditor.

SLG No. M.700-U003S

| | | | | | FOR COURT USE ONLY |
|---|---|---|---|---|---|

SCHEER LAW GROUP, LLP
Spencer P. Scheer (SBN: 107750),
155 N. Redwood Drive, Suite 100  San Rafael, CA 94903

TELEPHONE NO.: (415) 491-8900    FAX NO. (Optional): (415) 491-8910
E-MAIL ADDRESS (Optional):

SUPERIOR COURT OF CALIFORNIA, COUNTY OF

STREET ADDRESS:
MAILING ADDRESS:
CITY AND ZIP CODE: , CA
BRANCH NAME:

PLAINTIFF (name each): GREENWICH INVESTORS XXVI, LLC

DEFENDANT (name each): BABATUNDE WHITE; ALL PERSONS IN POSSESSION

CASE NUMBER:

| PROOF OF SERVICE | HEARING DATE: | DAY: | TIME: | DEPT.: | Ref No. or File No.: M.700-U003S |
|---|---|---|---|---|---|

AT THE TIME OF SERVICE I WAS AT LEAST 18 YEARS OF AGE AND NOT A PARTY TO THIS ACTION, AND **I SERVED COPIES** OF THE:

**NOTICE FOR POSSESSION; SPECIAL NOTICE; CONSUMER DISCLOSURE**

PERSON/ENTITY SERVED:    **BABATUNDE WHITE; ALL PERSONS IN POSSESSION**

DATE OF POSTING:    **03/05/2008**
TIME OF POSTING:    **08:45 pm**

DATE OF MAILING:    **March 6, 2008**
PLACE OF MAILING:    **OAKLAND**

ADDRESS OF PROPERTY:    **1644 CIPRIANI PLACE
BRENTWOOD, CA 94513
(HOME)**

MANNER OF SERVICE:

**By posting in a conspicuous place on the property therein described, there being no person of suitable age or discretion to be found at any known place of residence or business of said tenants; and mailing a copy by first class mail, postage pre-paid, and depositing said copies in the United States Mail, in a sealed envelope, addressed as stated above. [CCP §1162(3)]**

Fee for Service: **65.00**
        County: **Alameda**
        Registration No.: **856**
        **INTERCEPTOR Legal Support Service,
        Inc.
        55 Santa Clara Avenue, Suite 120
        Oakland, CA 94610
        (510) 419-3940**

I declare under penalty of perjury under the laws of the State of California that the foregoing information contained in the return of service and statement of service fees is true and correct and that this declaration was executed on **March  6  2008.**

Signature: _____
                                **Victor Blama**

**PROOF OF SERVICE**

982(a)/23\\New  July 1  1987]                                                                                 Order#: P153025/2Proof8

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address):
**BABATUNDE M. WHITE**                                    (925) 470-5757
1644 Cipriani Pl. Brentwood, CA 94513

ATTORNEY FOR (Name):

| | |
|---|---|
| NAME OF COURT: | Superior Court of California County of Contra Costa |
| STREET ADDRESS: | 45 CIVIC AVENUE |
| MAILING ADDRESS: | 45 CIVIC AVENUE |
| CITY AND ZIP CODE: | PITTSBURG, CALIFORNIA 94565 |
| BRANCH NAME: | PITTSBURG |

PLAINTIFF: **GREENWICH INVESTORS XXVI, LLC**

DEFENDANT: **BABATUNDE M. WHITE**

| | |
|---|---|
| **ANSWER—Unlawful Detainer** | CASE NUMBER:<br>**PS-08-0548** |

1. Defendant *(names)*:
   **BABATUNDE M. WHITE**

   **answers the complaint as follows:**

2. ***Check ONLY ONE of the next two boxes:***
   a. ☐ Defendant generally denies each statement of the complaint. *(Do not check this box if the complaint demands more than $1,000.)*
   b. ☑ Defendant admits that all of the statements of the complaint are true EXCEPT
      (1) Defendant claims the following statements of the complaint are false *(use paragraph numbers from the complaint or explain)*:
      Defendant denies Paragraphs 1-12 Plaintiff is not the legal owner of said property at 1644 Cipriani Pl. in Brentwood Ca 94513
         ☐ Continued on Attachment 2b (1).
      (2) Defendant has no information or belief that the following statements of the complaint are true, so defendant denies them *(use paragraph numbers from the complaint or explain)*:
      Paragraph #4 and #5 Plaintiff is not the legal owner of said property at 1644 Cipriani Pl. in Brentwood Ca 94513
         ☐ Continued on Attachment 2b (2).

3. **AFFIRMATIVE DEFENSES**    *(NOTE: For each box checked, you must state brief facts to support it in the space provided at the top of page two (item 3j)).*
   a. ☐ *(nonpayment of rent only)* Plaintiff has breached the warranty to provide habitable premises.
   b. ☐ *(nonpayment of rent only)* Defendant made needed repairs and properly deducted the cost from the rent, and plaintiff did not give proper credit.
   c. ☐ *(nonpayment of rent only)* On *(date)*:                    before the notice to pay or quit expired, defendant offered the rent due but plaintiff would not accept it.
   d. ☐ Plaintiff waived, changed, or canceled the notice to quit.
   e. ☐ Plaintiff served defendant with the notice to quit or filed the complaint to retaliate against defendant.
   f. ☐ By serving defendant with the notice to quit or filing the complaint, plaintiff is arbitrarily discriminating against the defendant in violation of the Constitution or laws of the United States or California.
   g. ☐ Plaintiff's demand for possession violates the local rent control or eviction control ordinance of *(city or county, title of ordinance, and date of passage)*:

   *(Also, briefly state the facts showing violation of the ordinance in item 3j.)*
   h. ☐ Plaintiff accepted rent from defendant to cover a period of time after the date the notice to quit expired.
   i. ☑ Other affirmative defenses are stated in item 3j.

Form Approved by the Judicial
Council of California
UD-105 [Rev. January 1, 2007]

**ANSWER—Unlawful Detainer**

Civil Code, §1940 et seq.;
Code of Civil Procedure, § 425.12
www.courtinfo.ca.gov
American LegalNet, Inc.
www.FormsWorkflow.com

**UD-105**

| PLAINTIFF (Name):   GREENWICH INVESTORS XXVI, LLC | CASE NUMBER: |
|---|---|
| DEFENDANT (Name):  BABATUNDE M. WHITE | PS-08-0548 |

3. **AFFIRMATIVE DEFENSES** (cont'd)
   j. Facts supporting affirmative defenses checked above *(identify each item separately by its letter from page one):*

   1) The plaintiff did unlawfully foreclose in violation of 12 USCA 3752, 12 USCA 3758, and 12 USCA with foreclosing proceeding.
   2) The plaintiff did unlawfully foreclose on the real property owned by the defendant

   (1) ☐ All the facts are stated in Attachment 3j.      (2) ☑ Facts are continued in **Attachment 3j.**

4. **OTHER STATEMENTS**
   a. ☐ Defendant vacated the premises on *(date):*
   b. ☐ The fair rental value of the premises alleged in the complaint is excessive *(explain):*

   c. ☑ Other *(specify):* Also See Attachment for Continuation

      3) The plaintiff did unlawfully proceed with eviction proceeding against **the defendant.**

5. **DEFENDANT REQUESTS**
   a. that plaintiff take nothing requested in the complaint.
   b. costs incurred in this proceeding.
   c. ☐ reasonable attorney fees.
   d. ☐ that plaintiff be ordered to (1) make repairs and correct the conditions that constitute a breach of the warranty to provide habitable premises and (2) reduce the monthly rent to a reasonable rental value until the conditions are corrected.
   e. ☑ Other *(specify):* Please Attachment See.

6. ☑ Number of pages attached *(specify):* 4

7. *(Must be completed in all cases)* An **unlawful detainer assistant** ☑ did not ☐ did for compensation give advice or assistance with this form. *(If defendant has received any help or advice for pay from an unlawful detainer assistant, state:*
   **UNLAWFUL DETAINER ASSISTANT (Business and Professions Code sections 6400- 6415)**

   a. Assistant's name:                                    b. Telephone No.:
   c. Street address, city, and ZIP:
   d. County of registration:              e. Registration No.:              f. Expires on (date):

   **BABATUNDE M. WHITE** _____        ▶ *Babatunde White* _____
   (TYPE OR PRINT NAME)                                        (SIGNATURE OF DEFENDANT OR ATTORNEY)

   _____                                        ▶ _____
   (TYPE OR PRINT NAME)                                        (SIGNATURE OF DEFENDANT OR ATTORNEY)

   *(Each defendant for whom this answer is filed must be named in item 1 and must sign this answer unless his or her attorney signs.)*

                                    **VERIFICATION**
   *(Use a different verification form if the verification is by an attorney or for a corporation or partnership. )*
   I am the defendant in this proceeding and have read this answer. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Date: 4/9/08

   **BABATUNDE M. WHITE** _____        ▶ *Babatunde M. White* _____
   (TYPE OR PRINT NAME)                                        (SIGNATURE OF DEFENDANT)

BABATUNDE M. WHITE
1    PRO PER
     1644 Cipriani Pl.
2    Brentwood, Ca. 94513

3

4

5                          SUPERIOR COURT OF CALIFORNIA

6                            CONTRA COSTA COUNTY

7                          PITTSBURG JUDICIAL DISTRICT

8
                                          )   Case No.: No. ps08-0548
9    Greenwich Investors XXVI, LLc.,       )
                                          )   ANSWER: UNLAWFUL DETAINER
10                 Plaintiff,              )
                                          )
11         vs.                            )
                                          )
12   Defandents., BABATUNDE M. WHITE,     )
                                          )
13              Defendant                 )

14

15

16                                   Answer

17

18

19   1) The plaintiff did unlawfully foreclose in violation of 12 USCA 3752, 12

20   USCA 3758, and 12 USCA with foreclosing proceeding.

21

22   2) The plaintiff did unlawfully foreclose on the real property owned by the

23   defendant.

24

25

1  3) The plaintiff did unlawfully proceed with eviction proceeding against the

2  defendant.

3

4  4) The defendant will fill a compliant for damages and supplemental of

5  jurisdiction pursuant to 28 USCA 1367 in the United States District Court of

6  the Northern District of California within ten days

7

8

9

10

11

12

13

14    Dated this 8th day of April, 2008

15    By: _Balatunde White_
           1644 Cipriani Pl.
                    Brentwood, Ca. 94513
16                  BABATUNDE M. WHITE
                    PRO PER

17

18

19

20

21

22

23

24

25